NOT FOR PUBLICATION

RECEIVED
SEP 2 8 2007
AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, : | Crim. No. 07-349 (GEB) |
| v. : | |
| : | **MEMORANDUM OPINION** |
| PHILIP MONTGOMERY and : | |
| EFRIN RIVERA, : | |
| : | |
| Defendants. : | |

**BROWN, Chief Judge**

This matter comes before the Court upon the Government's motion in limine to preclude the expert report and testimony of Dr. Gary Aumiller. The Court has reviewed the parties' submissions and for the reasons set forth below, the Court will grant the Government's motion.

**I.    BACKGROUND**

On May 30, 2007, a superceding indictment ("indictment") was filed, charging Phillip Montgomery and Efrin Rivera with three counts: (1) deprivation of civil rights under color of law; (2) conspiracy to obstruct justice; and (3) obstruction of justice. The indictment states that Defendant Montgomery, while serving a warrant as a police officer with the Asbury Park Police Department, violated 18 U.S.C. § 242 by unlawfully taking a watch from a fugitive. Indictment at 1-3. After taking the watch, Montgomery allegedly gave it to a jewelry store owner to hold. Id. at 3. Allegedly, over three years later, after the jewelry story owner received a federal subpoena, Defendants Montgomery and Rivera conspired to and did obstruct justice by intimidating and corruptly persuading the jewelry store owner to return the watch to Defendant Montgomery. Id. at 4-7.

On June 27, 2007, the Court ruled that Defendant Montgomery could obtain a psychological evaluation for the purpose of determining whether he suffers from post traumatic stress disorder ("PTSD"). On July 2, 2007, Dr. Aumiller evaluated Defendant Montgomery and later issued a Forensic Psychological Evaluation (the "Aumiller Report"). Dr. Aumiller states that Montgomery "fully admits to taking the watch, stating that he wanted the fugitive to know that he had to deal with him. He said it outright, this is what is done 'in the hood' and how people communicate." Aumiller Report at 19. "He was saying by taking the watch he was showing the fugitive that he didn't get away after all and calling the fugitive to confront him to get his watch returned." Id.

Dr. Aumiller found that Mr. Montgomery was not obviously impaired by his post-traumatic stress disorder until after the watch was taken. Id. However the Aumiller Report states that "[h]e may have had pre-morbid incidents that were acting on him at the time of the watch incident. These pre-morbid events may have caused some mental confusion or serious rigidity in thinking that he was not as aware of at the time." Id. Dr. Aumiller concluded, as to the first count, that "[f]rom a forensic viewpoint, [Montgomery's] *mens rea* is not likely to be one of a man stealing a watch for profit or for personal wants, but to send a message." Id. at 20.

As to the obstruction of justice count, Dr. Aumiller stated that Defendant Montgomery "is still somewhat suffering" in regards to his prior diagnosis of PTSD and consequently "[h]e is likely not capable of organized clear thought." Id. "Unless he was told specifically who not to talk to and under what conditions, he is likely not [to] be able to make that distinction on his own." Id. Dr. Aumiller concluded that the "mens rea for a purposeful act to obstruct justice is highly questionable under these circumstances unless a specific warning was given, then it would

still be questionable to a lesser degree." Id.

The Government moves to exclude Dr. Aumiller's report and testimony for three reasons: (1) under United States v. Pohlot, 827 F.2d 889 (3d Cir. 1987), it is not admissible as expert testimony that negates mens rea; (2) it is precluded by Fed. R. Evid 401-03; and (3) it fails to satisfy the requirements of Fed. R. Evid. 702. Because the Court finds that the testimony is not admissible under Pohlot, the Court will not address the Government's other arguments.

## II. DISCUSSION

### A. THE POHLOT STANDARD

Expert psychological testimony can be admitted to negate the mens rea element of an offense in limited circumstances. In Pohlot, the Third Circuit determined that the evidence of a mental disease or defect is not prohibited by the Insanity Defense Reform Act of 1984[1] if it serves to negate the mens rea element of a criminal statute. Pohlot, 827 F.2d at 897. The court warned that 'the strict use of psychiatric evidence to negate mens rea may easily slide into wider usage that opens up the jury to theories of defense more akin to justification." Id. at 905. In light of this "strong danger of misuse" district courts "should admit evidence of mental abnormality on the issue of mens rea only when, if believed, it would support a legally acceptable theory of mens rea." 827 F.2d at 905-06. The Third Circuit distinguished between admissible evidence that

---

[1] The Insanity Defense Reform Act states, in relevant part:
(a) Affirmative defense.–It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.
(B) Burden of proof.–The defendant has the burden of proving the defense of insanity by clear and convincing evidence.
18 U.S.C. § 17 (2000).

3

truly negates mens rea and inadmissible evidence going toward "diminished capacity" and "diminished responsibility" defenses. Id. at 905. Pohlot made clear that the district courts are required to "carefully scrutinize psychiatric defense theories bearing on mens rea" because "[p]resenting defense theories or psychiatric testimony to juries that do not truly negate mens rea may cause confusion about what the law requires." Id. at 890. Courts should perform this evaluation "outside the presence of the jury." Id. at 906.

**B.    THE ARGUMENTS OF THE PARTIES**

The Government argues that the Aumiller Report is inadmissible because fails under Pohlot. Mot. in Limine Br. at 3. Regarding the deprivation of civil rights count, the Government states that the Aumiller Report concedes that "Montgomery did not even suffer from PTSD" when he allegedly stole the watch. Id. at 9. The Government argues that the "notion that defendant Montgomery was attempting to communicate with and send a message" is "nothing more than an explanation." Id. at 10. Regarding the obstruction of justice count, the Government argues that the Aumiller Report did not negate the mens rea because it did not analyze the defendant's mental state with regard to certain actions taken in furtherance of the alleged conspiracy. Id. at 12. Further, the Government asserts that the Aumiller Report merely made conclusory statements regarding the mental capacity of defendant Montgomery to obstruct justice and that these statements are precluded by Pohlot. Id. at 13. Finally, the Government also noted that "Dr. Aumiller does not even attempt to analyze the mens rea for the conspiracy to obstruct justice charge." Id. at 12 n.17.

Defendant Montgomery counters that Dr. Aumiller's report negates the "willfulness"

4

mens rea element of the deprivation of rights under color of law count.[2] Specifically, Montgomery argues that the Government misapprehends the "willful" requirement by limiting it to a requirement of "'purposeful activity;' simply that Montgomery took the watch." Def.'s Br. at 3-4. He asserts that the willfulness standard "requires an 'evil motive.'" Id. Montgomery claims that the Aumiller Report negates an "evil motive" because Defendant Montgomery merely intended to "send a message" and "open the lines of communication with the fugitive, not to deprive the fugitive of the watch." Id. at 4-5. Montgomery also argues that the Aumiller Report's identification of "pre-morbid incidents" presents psychiatric evidence linking to his mental state. Id. at 5-7.

Defendant Montgomery also argues that the Aumiller Report negates the "knowingly" mens rea element of the obstruction of justice count.[3] Montgomery claims that Dr. Aumiller's analysis was thorough and correct. Id. at 7. Montgomery also argues that nothing in Pohlot precludes the statements made by D. Aumiller. Id. He also asserts that "if an individual is incapable of organized clear thought, he or she is likely not capable of possessing a 'knowing' intent to commit a crime." Id. Finally, Montgomery states that the Aumiller Report does not

---

[2] 18 U.S.C. § 242 states, in relevant part:
Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . shall be fined under this title or imprisoned not more than one year or both . . . .

[3] 18 U.S.C. § 1512(b)(2) states, in relevant part:
Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to . . . (2) case or induce any person to– (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding; (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding; . . . shall be fined under this title or imprisoned not more than ten years or both.

5

offer "justifications," but instead "provides the reasons why Montgomery lacked" the necessary mens rea. Id. at 8.

The Government replies by arguing that Defendant Montgomery misapprehends the mens rea requirement and mistakenly claims that it is "legal to steal jewelry as long as it is being done to send a message." Reply Br. at 1. The Government argues that Montgomery misinterprets the nature of the "willfulness" element and insists that Montgomery stole the watch with clear intent to deprive the owner of his property. Id. at 2-5. The Government also argues that the Aumiller Report provides "an excuse or justification for the crime," which amounts to a "version of a diminised capacity defense . . . precluded by Pohlot." Id. at 7. Regarding the obstruction charge, the Government likewise argues that the Aumiller Report is "nothing but a poorly veiled and legally precluded mental incapacity defense." Id. at 8.

## C.     THE APPLICATION OF THE STANDARD

The Court concludes that the Aumiller Report, even if believed, does not negate the willfulness mens rea requirement of the first count. The Aumiller Report indicates that, in taking the watch, Defendants was motivated by a desire to send a message. This says nothing about the willfulness of Montgomery's actions. As the Third Circuit explained in United States v. Johnstone, 107 F.3d 200, 210 (3d Cir. 1997), it does not matter that a defendant may have been motivated by a particular motive or emotion, if "the defendant intended to accomplish that which the Constitution forbids." The Aumiller Report virtually concedes that Montgomery intended to deprive the fugitive of the watch. The Report states that defendant initially "took [the watch] and threw it on the ground three times to break it," but that when it did not break, he put it in his pocket because "some of these guys try to steal our badges, so I got this [person]." Aumiller

6

Report at 9. Therefore, the Aumiller Report does not negate the required mens rea.

Moreover, the argument that defendant "may have had pre-morbid incidents" that "may have caused some mental confusion or serious rigidity in thinking that [Montgomery] was not as aware of at the time" is simply a diminished capacity defense precluded by Pohlot. The Pohlot court stated that:

> "Criminal responsibility must be judged at the level of the conscious. If a person thinks, plans and executes the plan at that level, the criminality of his act cannot be denied, wholly or partially, because, although he did not realize it, his conscious was influenced to think, to plan and to execute the plan by unconscious influences which were the product of his genes and his lifelong environment."

Pohlot, 827 F.2d at 906 (quoting State v. Sikora, 44 N.J. 453 (1965)). Further, an impulse for poor judgment does not negate the required mens rea. See United States v. Baxt, 74 F. Supp. 2d 436, 441-42 (D.N.J. 1999) (finding that "an impulse for grandiosity or poor judgment" would not negate the mens rea required to support a conviction for filing false loan applications). The Aumiller Report supports an argument that defendant was not aware of the effect that the "pre-morbid incidents" may have had on the clarity and rigidity of his thought. Pohlot precludes such theories from reaching the jury.

The Court also concludes that the Aumiller Report does not negate the "knowingly" mens rea requirement of the obstruction of justice count. Defendant argues that he did not knowingly obstruct just because his prior diagnosis of PTSD still caused him to engage in "disorganized thinking." The Aumiller Report concludes that Defendant Montgomery "is likely not capable of organized clear thought" and "is not expected to have clear thought patterns." These conclusions suggest that Mongomery should be excused for his behavior because his PTSD may have inspired him to obstruct justice. The Aumiller Report does not support a claim that Montgomery

7

did not knowingly intimidate or persuade the jewelry store owner. Further, as discussed above, diminished capacity arguments such as these are precluded by Pohlot.

### III.  CONCLUSION

For the foregoing reasons, the Court will grant the Government's motion in limine. An appropriate form of Order accompanies this Opinion.

Dated: September 24, 2007

GARRETT E. BROWN, JR., U.S.D.J.