NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | Crim. No. 07-349 (GEB) |
| v. : | |
| : | **MEMORANDUM OPINION** |
| PHILIP MONTGOMERY and : | |
| EFRIN RIVERA, : | |
| : | |
| Defendants. : | |

**BROWN, Chief Judge**

This matter comes before the Court upon defendants Phillip Montgomery ("Montgomery") and Efrin Rivera's ("Rivera")(collectively "Defendants) Motion for a New Trial.  The Court has reviewed the parties' submissions and for the reasons set forth below, the Court denies Defendants' Motion.

**I.     BACKGROUND**

On May 30, 2007, the Trenton Grand Jury returned an indictment, charging Montgomery with deprivation of civil rights under color of law and charged both defendants with conspiracy to obstruct justice and obstruction of justice. The Superceding Indictment states the following allegations:

| | |
|---|---|
| Count 1 | Deprivation of Civil Rights, in violation of 18 U.S.C. §§ 242 and 2 |
| Count 2 | Conspiracy to Obstruct Justice, contrary to 18 U.S.C. § 1512(b)(2)(A)  & (2)(B), in violation of 18 U.S.C. § 371; and |
| Count 3 | Obstruction of Justice, in violation of 18 U.S.C. §§ 1512(b)(2)(A) and (2)(B). |

Trial by jury took place between September 24, 2007 and October 5, 3007.  The jury returned a verdict on October 5, 2007 finding defendants guilty on all applicable counts.

## II.     DISCUSSION

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Whether to grant a motion for a new trial is within the discretion of the trial court.  See United States v. Saada, 212 F.3d 210, 215 (3d Cir. 2000).  A trial court is empowered to grant a motion for a new trial if after reviewing the evidence, it determines that there has been a "miscarriage of justice."  Virgin Islands v. Commissiong, 706 F. Supp. 1172, 1184 (D.V.I. 1989)(citing United States v. Mastro, 570 F. Supp. 1388 (D. Pa. 1983)).  The Third Circuit has stated that a trial court should only order a new trial if it "believes that 'there is a serious danger that a miscarriage of justice has occurred--that is, that an innocent person has been convicted.' " United States v. Brennan, 326 F.3d 176, 189 (3d Cir. 2003)(quoting United States v. Santos, 20 F.3d 280, 285 (7th Cir. 1994) (quoting United States v. Morales, 902 F.2d 604, 606 (7th Cir. 1990)).  A court must grant a motion for a new trial when a reasonable possibility exists that a "trial error had a substantial influence on the verdict."  Commissiong, 706 F. Supp. at 1184.

Defendants make several arguments in attempting to persuade the Court to grant their Motion for a New Trial.  Defendants first argue that the Government's failure to adequately disclose during discovery the extent to which they worked with a key Government witness, Victor Ashkenazi ("Ashkenazi") was a "substantial miscarriage of justice."  According to

Defendants, this Court's refusal to charge the jury (as requested by defense counsel) on Governmental Overreaching regarding this alleged failed disclosure amounted to "error having a substantial impact on the jury verdict." Montgomery Br. at 2. Defendant Rivera further asserts that these alleged discovery disclosure shortcomings by the Government prevented Rivera from formulating an entrapment defense. Rivera Letter Br. at 1. Defendants also argue that this Court's response to several questions posed by the jury amounted to a substantial miscarriage of justice, warranting a new trial. Finally, Defendant Rivera asserts that his case should have been severed form Montgomery's. Id. at 2-3.

      Defendants argue that the Government failed to adhere to its pre-trial discovery obligations by not explicitly revealing that it "scripted" phone calls made by Ashkenazi to Montgomery. However Defendants cite no authority that would have required the Government to make this specific disclosure. Moreover, Defendants do not dispute the Governments' assertion that Defendants were in possession of every wiretap cited in Defendants' briefs as well as consensual recordings, which reveal direct communications between Ashkenazi and a Federal Bureau of Investigations ("FBI") agent. See Government Br at 5. Rivera states in his brief that he did not become aware of the extent of the Government's involvement with Ashkenazi until cross-examination of a government witness during the case. Rivera Br. at 2. However, the Government points out that Rivera's defense counsel demonstrated his knowledge that Ashkenazi was working closely with government agents when he questioned Agent Cooke (the Government's first witness) on whether he had "listened to an audiotape" of communications between Agent Diorio and Ashkenazi. Government Br. at 6; see Sept 25, 2007 Tr. at 94. Because Agent Cooke did not testify on direct about the body wire that recorded this

conversation between Ashkenazi and Agent Diorio, Rivera's counsel must have had prior knowledge of these communications.  For these reasons, the Court finds that the Government satisfied all of its discovery obligations.[1]

Defendants assert that in addition to the Government's failure to disclose the extent of their involvement with Ashkenazi, Ashkenazi lied to Montgomery when he told him that he received a second subpoena and refused to follow Montgomery's directions to give the watch to the FBI, falsely claiming that he was too intimidated to return the watch.  Defendants also complain that Ashkenazi was dishonest in failing to reveal to Defendants that he had already turned the watch over to the Government.  As a result, Defendants argue that the jury could have reasonably inferred from Ashkenazi's testimony in addition to the testimony of federal agents, that "the Government's actions constituted Governmental Overreaching to such an extent that defendants' right to Due Process under the Fifth Amendment was violated."  Defendants submit that the Court erred in failing to give a Governmental Overreaching Charge to the jury and "such error had a substantial impact on the jury verdict . . . [so that] in the 'interest of justice,' a new trial is warranted pursuant to Fed. R. Crim. P. 33."  Montgomery Br. at 2.  The Court disagrees.

The Third Circuit recognizes a finding of Governmental Overreaching when "the government employ[s] outrageous law enforcement investigative techniques." United States v. Nolan-Cooper, 155 F.3d 221, 229 (3d Cir. 1998)(citing United States v. Voigt, 89 F.3d 1050,

---

[1] Defendant Rivera's argument that he was improperly precluded from raising an entrapment defense fails because the alleged discovery failure did not relate to communications involving Rivera and because vicarious entrapment is not a recognized defense in the Third Circuit.  See United States v. Beverly, 723 F.2d 11, 12 (3d Cir. 1983)("An entrapment defense cannot be predicated on the actions of a party who has not agreed explicitly or implicitly to help the government make its case against the person who complains of entrapment").

1064 (3d Cir. 1996)).  The Third Circuit has observed that "because of the extraordinary nature of the doctrine, the judiciary has been 'extremely hesitant' to uphold claims that law enforcement conduct violates the Due Process clause."  Id. at 230 (citing Voigt, 89 F.3d at 1065; United States v. Jannotti, 673 F.2d 578, 608 (3d Cir. 1982)).  The last case where a court found Governmental Overreaching in this circuit was United States v. Twigg, 588 F.2d 373 (3d Cir. 1978).  In that case, an undercover agent concocted, financed, and directed a complex crime (setting up a speed lab).  Id.  Defendants' complaints regarding the Government's conduct in working with Ahskenazi, which resulted in misleading Montgomery as to the location of the watch and the second subpoena do not come close to Governmental Overreaching pursuant to Twigg.  Defendants cite no authority precluding government agents from setting up a "ruse" to elicit evidence, which is exactly what the Government did in coaching Ashkenazi.[2]  See Nolan-Cooper, 155 F.3d at 230-231 (Governmental overreaching "'is an extraordinary defense reserved for only the most egregious circumstances. It is not to be invoked each time the government acts deceptively or participates in a crime that it is investigating.'")(quoting United States v. Mosley, 965 F.2d 906, 909 (10th Cir. 1992)).  Even accepting Montgomery's testimony that he had advised Ashkenazi to turn the watch over to the FBI as true,  the Government's strategy to have Ashkenazi mislead Montgomery regarding the location of the watch and the second subpoena still does come close to meeting  the high standard of outrageousness required substantiate a claim of Governmental Overreaching.  See id.  As such, no new trial is warranted

---

[2] Agent Diorio testified that setting up a "ruse" is a common technique designed to gather evidence.  In this case, the "ruse" involved coaching Ashkenazi to deceptively gather information from Montgomery that might reveal whether Montgomery stole the watch from John Thomas. 9/28/07 Tr. at 56.

based on the Court's decision not to charge Governmental Overreaching.

Defendants also take issue with the Court's response to the following two questions posited to the Court by the jury during deliberations:

> Jury Question: [C]an you interpret the phrase, at the time of the offense, as to whether it covers only actions that occur at [John Thomas'] mother's apartment on February 22nd 2003, or also events that occurred subsequent to leaving the apartment, i.e., continued deprivation of civil rights[?]
>
> Court's Response: The offense charged in the indictment states, in or about February, 2003 in the district of New Jersey. I instructed you previous[ly] that each of the counts charged in the offense took place on or about [a] certain date or between certain dates. The law requires only a substantial similarity between dates as charged in the indictment and dates alleged or reasonably near those dates alleged . . . . There's no limitation in the indictment to that portion of one day that's set forth there.
>
> [10/5/07 Tr. at 11-12].
>
> Jury Question: We agree that Phillip was under the color of the law at [John Thomas'] mother's apartment, but was he also under color of law after he was off the clock, duty later that day?
>
> Court's Response: The issue is not whether he was on the clock or off. The Supreme Court has told us a defendant acts under color of law when he misuses power possessed by virtue of state law and made possible only because he was clothed with the authority of the state law. The question is, was there a sufficient nexus between his position as a police officer and his alleged violation.
>
> [10/5/07 Tr. at 12-13].

Defendants contend that the Court improperly instructed the jury that they could consider events subsequent to Montgomery leaving John Thomas' (J.T.) apartment on February 27, 2003 in determining Montgomery's intent for purposes of satisfying the "willfulness" requirement of 18 U.S.C. § 242. Defendants also argue that the court erred in instructing the jury that Montgomery could have acted under "color law" subsequent to February 27, 2003. Defendants contend that both of these responses are at odds with the original jury instructions which required the jury to

determine that "the defendant acted willfully at the time the defendant exercised control over the property." See 10/4/27 transcript at 29.

As can be seen from the transcript quoted above, the Court never instructed the jury that it could consider events subsequent to Montgomery's taking of the watch. We instructed the jury that because the indictment alleges the taking of the watch occurred in February, 2003, the law only required the jury to determine that the offense occurred around that general time. The Court also accurately defined acting "under color of law" to the jury. See United States v. Colbert, 172 F.3d 594, 596 (8th Cir. 1999)(" [A] defendant acts under color of law when he misuses power possessed by virtue of state law and made possible only because he was clothed with the authority of state law.")(citing West v. Atkins, 487 U.S. 42, 49, (1988). The Court said nothing in either of these explanation to the jury that would contradict the original instructions requiring a determination that Montgomery "acted willfully at the time the defendant exercised control over the property."

Rivera also complains that the Court provided an improper response to the jury's question of whether an entrapment defense was available. See 10/5/07 Tr. at 13. According to Defendant Rivera, the Court erred in refusing to caution the jury that it could consider the Government's conduct in determining whether Defendants demonstrated the requisite intent to persuade Ashkenazi to hold onto the watch. Rivera Br. at 12. The Court disagrees. Because the defense of entrapment was not raised in this case, the instruction to the jury that it could not consider the entrapment defense was proper. See id. Further, the Court cautioned the jury after the response to the entrapment question that the Government still shouldered the burden of "prov[ing]each and every element . . . beyond a reasonable doubt." 10/5/07 Tr. at 13. Defendant Rivera cites no

7

authority that would find error in the Court's complete and accurate answer and the Court is aware of none.

### III.   CONCLUSION

For the foregoing reasons, the Defendants' motion is denied.  An appropriate form of Order accompanies this Opinion.

Dated:   December 21, 2007

                                                          s/ Garrett E. Brown, Jr.  
                                                GARRETT E. BROWN, JR., U.S.D.J.